COMMONWEALTH *vs.* JOHN C. CARTER.

Suffolk.    Nov. 21, 1881. — Jan. 4, 1882.    MORTON, ENDICOTT & ALLEN, JJ., absent.

The St. of 1864, c. 122, § 2, so far as it authorizes inspectors of milk to enter all carriages used in the conveyance of milk, and, whenever they have reason to believe any milk found therein is adulterated, to take specimens thereof for the purpose of analyzing or otherwise satisfactorily testing the same, is constitutional.

INDICTMENT for an assault, on September 28, 1880, upon Martin Griffin, an inspector of milk, while said Griffin was in the discharge of his duty as such inspector. Trial in the Superior Court before *Gardner*, J., who allowed a bill of exceptions, in substance as follows:

The defendant admitted that Griffin was a duly appointed inspector of milk of the city of Boston at the time of the acts and assault alleged in the indictment; and that he knew that Griffin was such inspector.

Griffin testified for the government, that, on September 28, 1880, he saw the defendant on Prospect Street in Boston about half-past six o'clock in the morning; that when his wagon stopped, and he was pouring out some milk, he said to the defendant, " I want to examine your milk; " that the defendant said nothing, but went to the house, before which his wagon stopped, with the

milk which he had poured out; that while the defendant was gone to the house, the witness went to the wagon, and took from the back part a can of milk, and held it in his hand as the defendant came from the house, and said to him, " I want to examine your milk; " that the defendant said nothing, but came up and seized the can and wrenched it violently from the witness's hand, saying he could have no milk out of this wagon.

The witness also testified, that he intended to examine the milk as inspector ; that he did not intend to take the can of milk away, but only to take about a pint of milk from the can in order to have it analyzed, and to test its purity ; but that nothing in relation to this was said to the defendant; that he had a short time before arrested the defendant for selling adulterated milk.  There was other evidence as to the violence used by the defendant when he took the can from Griffin.  It was admitted that the defendant was duly licensed to sell milk in Boston.

The defendant offered no evidence, but requested the judge to instruct the jury as follows: " 1. If the jury find that Griffin had no right to take the defendant's milk, it was not an assault to retake it, using no more force than was necessary.   2. It was not Griffin's right or duty to take the defendant's milk, merely because he was an inspector.   3. It is the duty of the jury to acquit, if they have a reasonable doubt that Griffin had cause to believe that the milk in the can taken was adulterated.   4. The St. of 1864, *c.* 122, § 2, is not constitutional."

The judge gave the first and third requests for instruction, and refused to give the others.  Instead of the second request, the judge instructed the jury as follows: " If Griffin, as inspector of milk, had reason to believe that the milk the defendant was conveying for sale was adulterated, and, in the exercise of his duty, took the can of milk into his hands under such belief, merely to examine, and to take a specimen therefrom for analysis ; and if the defendant knew that Griffin was such inspector of milk, in the discharge of his duty as such inspector, then, if the defendant violently seized the can of milk from Griffin's hands, while Griffin had it for the purpose which has been stated, the defendant may be found guilty; but if the government has failed to satisfy you beyond a reasonable doubt of

these several propositions, then the jury should find the defend-
ant not guilty."

The jury returned a verdict of guilty; and the defendant
alleged exceptions.

*J. D. Thomson*, for the defendant.

*C. H. Barrows*, Assistant Attorney General, (*G. Marston*,
Attorney General, with him,) for the Commonwealth.

FIELD, J. The only question argued in this case is the con-
stitutionality of the St. of 1864, *c.* 122, § 2, so far as it author-
izes inspectors of milk to " enter any place where milk is stored
or kept for sale, and all carriages used in the conveyance of
milk; and whenever they have reason to believe any milk found
therein is adulterated, they shall take specimens thereof and
cause the same to be analyzed, or otherwise satisfactorily tested,
the result of which they shall record and preserve as evidence."

It is contended that this provision is unconstitutional, because
it authorizes the taking of property without consent or compen-
sation; warrants unreasonable searches and seizures; compels
one to furnish evidence against himself; and is not within the
police power of the Commonwealth. An analysis of a specimen
of milk offered for sale is an appropriate means of carrying into
effect the various provisions of the statutes regulating the sale
of milk in this Commonwealth. In the case at bar, the can of
milk was taken from a carriage used in the conveyance of milk,
and it is unnecessary to consider whether the words of the
section " place where milk is stored or kept for sale " may or
may not include a dwelling-house, and whether, if construed to
include a dwelling-house, they do not purport to give a power
which the Legislature could not give, because the clause au-
thorizing an entry into any place where milk is stored or kept
for sale is separable from that which authorizes an entry into
all carriages used in the conveyance of milk. Neither is the
power granted in violation of the provision of art. 12 of the
Declaration of Rights, that no subject shall be compelled to
accuse, or furnish evidence against himself. If the seizure is
such as is authorized by the Constitution and a law passed
in pursuance thereof, the fact that the thing seized may be
used in evidence in a criminal charge against the person from
whose possession it is taken, does not render the seizure itself a

violation of the Declaration of Rights. *Commonwealth* v. *Dana*, 2 Met. 329, 337. If the statute had required that all milk offered for sale should first be inspected, it would hardly be contended that the trifling injury to property occasioned by taking samples for inspection would be such a taking of private property for public use as to require that compensation be made therefor. Such an injury to property is a necessary incident to the enforcement of reasonable regulations affecting trade in food. Private property is held subject to the exercise of such public rights, for the common benefit; and in the case of licensed dealers in merchandise, the injury suffered by inspection is accompanied by advantages which must be regarded as a sufficient compensation. *Bancroft* v. *Cambridge*, 126 Mass. 438, 441. Instead of requiring all milk offered for sale to be first inspected, the Legislature for obvious reasons has permitted licensed dealers to sell milk without inspection, has imposed penalties for selling adulterated milk, has defined what shall be deemed adulterated milk, and has provided that when the inspector of milk has reason to believe that any milk has been adulterated he may take specimens thereof in order that by analysis or otherwise he may determine whether the milk has been adulterated. Such a seizure of milk for the purposes of examination is a reasonable method of inspection, and does not require a warrant. It is a supervision under the laws by a public officer of a trade which concerns the public health, and is within the police power of the Commonwealth. *Commonwealth* v. *Ducey*, 126 Mass. 269. *Jones* v. *Root*, 6 Gray, 435.

There is nothing in this case which requires us to determine the rights of the defendant, if the inspector had attempted to take a larger quantity of milk for analysis than was reasonably necessary for the performance of his duties. We have not found it necessary to consider whether the defendant, by voluntarily accepting a license to sell milk, has not assented to the conditions and regulations which the Legislature has seen fit to impose upon the exercise of the trade licensed. See *Pitkin* v. *Springfield*, 112 Mass. 509; *Bertholf* v. *O'Reilly*, 74 N. Y. 509, 517.  *Exceptions overruled.*