COMMONWEALTH *vs.* ALBERT M. PEAR.
SAME *vs.* HENNING JACOBSON.

Middlesex. March 17, 1903. — April 2, 1903.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Constitutional Law. Board of Health. Vaccination. Evidence. Words,* " Wholesome and reasonable."

R. L. c. 75, § 137, authorizing the board of health of a city or town to require the vaccination of all its inhabitants, and imposing a fine of $5 for a violation of such requirement, is constitutional.

A defendant charged with violation of a requirement of the board of health of a city or town, under R. L. c. 75, § 137, that all its inhabitants shall be vaccinated, cannot introduce evidence to show what vaccination consists of, this being matter of common knowledge, or of the grounds of his refusal to comply with the requirement, this involving matter of opinion and also being immaterial, or of the alleged injurious or dangerous effects of vaccination, the Legislature being the judges of what the welfare of the people demands.

TWO COMPLAINTS, received and sworn to on July 17, 1902, in the Third District Court of Eastern Middlesex, under R. L. c. 75, § 137, for refusing to comply with an order of the board of health of the city of Cambridge, requiring the vaccination and revaccination of all the inhabitants of that city.

Coming by appeal to the Superior Court, both cases were tried before *Wait,* J., who refused to order a verdict of not guilty or to make the rulings requested by the respective defendants. He also in the Jacobson case excluded the evidence offered by the defendant which is described by the court. The jury in each case returned a verdict of guilty; and the defendants alleged exceptions.

*J. W. Pickering & H. Ballard* (of Vermont), for the defendants.

*H. Bancroft,* Assistant District Attorney, for the Commonwealth.

KNOWLTON, C. J. These are complaints against the respective defendants for refusing to comply with a requirement of the board of health of Cambridge, made on February 27, 1902, under the R. L. c. 75, § 137, ordering that all the inhabitants of the city, who had not been successfully vaccinated since March 1, 1897, be vaccinated or revaccinated. The order recites that smallpox has been prevalent to some extent in the city of Cambridge, and still continues to increase; that it is necessary for the speedy extermination of the disease that all persons not protected by vaccination should be vaccinated; and that, in the opinion of the board, the public health and safety require the vaccination or revaccination of all the inhabitants of Cambridge. At the trial of each case there was uncontradicted evidence of the adoption of the order making the requirement by the board of health, and that the chairman of the board of health called upon the defendant and informed him that if he refused to be vaccinated he would incur the penalty of $5 provided by the statute, and

would be prosecuted therefor, and then and there offered to vaccinate the defendant without any expense to him, and that he then and there absolutely refused to be vaccinated. The requirement of the board of health follows exactly the provisions of the statute. In each case the defence principally relied on is founded upon the refusal of the court to comply with numerous requests for rulings, which, in a variety of forms, called for an instruction that the statute was in violation of the Constitution of Massachusetts and of the Constitution of the United States.

In the second of the cases there is also an exception to the exclusion of evidence offered by the defendant to prove numerous propositions in regard to vaccination, chiefly relating to the alleged injurious and dangerous effects of it. We will consider the cases first in reference to the constitutionality of the statute, without regard to the evidence which was excluded. This statute is as follows: "The board of health of a city or town if, in its opinion, it is necessary for the public health or safety shall require and enforce the vaccination and revaccination of all of the inhabitants thereof and shall provide them with the means of free vaccination. Whoever, being over twenty-one years of age and not under guardianship, refuses or neglects to comply with such requirement shall forfeit five dollars." Its language, considered in connection with facts of common knowledge, makes its object plain. It was enacted with a view to the enforcement of necessary measures for the prevention of smallpox. That such an object is worthy of the intelligent thought and earnest endeavor of legislators is too plain for discussion. Under the police power there is general legislative authority to make laws for the common good. Article 4 of c. 1, § 1, of the Constitution of Massachusetts states more fully than most constitutions the nature of this power, when it gives authority to the " General Court, from time to time to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, and ordinances, directions and instructions, either with penalties or without; so as the same be not repugnant or contrary to this constitution, as they shall judge to be for the good and welfare of this commonwealth," etc. That this power extends to the protection and preservation of the public health is not questioned. *Salem* v. *Eastern Railroad*, 98 Mass. 431. *Slaughter-House*

*cases*, 16 Wall. 36, 62. *Beer Co.* v. *Massachusetts*, 97 U. S. 25, 33. *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659, 669. The rights of individuals must yield, if necessary, when the welfare of the whole community is at stake. This is true of the right to personal liberty as well as the right to property. *People* v. *Warden of City Prison*, 144 N. Y. 529, 535. Sometimes it is necessary that persons be held in quarantine. R. L. c. 75, § 131. *Haverty* v. *Bass*, 66 Maine, 71. *Minneapolis, St. Paul & Sault Ste. Marie Railway* v. *Milner*, 57 Fed. Rep. 276. Conscription may be authorized if the life of the nation is in peril. See *Lanahan* v. *Birge*, 30 Conn. 438. The use or sale of certain kinds of property may be regulated or prohibited. *Fisher* v. *McGirr*, 1 Gray, 1. *Commonwealth* v. *Waite*, 11 Allen, 264. *Watertown* v. *Mayo*, 109 Mass. 315. *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659. *Mugler* v. *Kansas*, 123 U. S. 623. In these and other ways the liberty of the individual may be interfered with whenever the general welfare requires a course of proceedings to which certain persons object because of their peculiar opinions or special individual interests.

It is a fact of common knowledge that smallpox is a terrible disease whose ravages have sometimes swept away thousands of human beings in a few weeks. It is equally well known that a large majority of the medical profession and of people generally consider vaccination, repeated at intervals of a few years, a preventive of the disease. So far as we are aware, all courts that have considered the subject have recognized the right of the Legislature to enact laws founded upon the theory that vaccination is important as a preventive of smallpox, and to impose restrictions, during an epidemic, upon persons who have not been vaccinated. There are some cases in which it has been held that the statute did not go far enough to authorize the restrictions which the authorities sought to impose. *In re Smith*, 146 N. Y. 68. *State* v. *Burdge*, 95 Wis. 390. *Potts* v. *Breen*, 167 Ill. 67. *Mathews* v. *Kalamazoo Board of Education*, 127 Mich. 530. But these assume that the Legislature may interfere with the exercise of the ordinary rights of individuals if they are not vaccinated when smallpox is prevalent. Legislation requiring vaccination, or authorizing some local board to require it, as a prerequisite to attendance at school, has been sustained whenever

called in question. *Duffield* v. *Williamsport School District*, 162 Penn. St. 476. *Bissell* v. *Davison*, 65 Conn. .183. *Abeel* v. *Clark*, 84 Cal. 226. *Blue* v. *Beach*, 155 Ind. 121. *In re Walters*, 84 Hun, 457. *In re Rebenack*, 62 Mo. App. 8. Legislation requiring vaccination is mentioned as a proper exercise of the police power in *Lawton* v. *Steele*, 152 U. S. 133, 136. Statutes substantially the same as the one now before us have been sustained, after careful consideration, by the highest courts of Georgia and North Carolina. *Morris* v. *Columbus*, 102 Ga. 792. *State* v. *Hay*, 126 N. C. 999. *Levin* v. *Burlington*, 129 N. C. 184.

Let us consider the offer of evidence which was made by the defendant Jacobson. The ninth of the propositions which he offered to prove, as to what vaccination consists of, is nothing more than a fact of common knowledge, upon which the statute is founded, and proof of it was unnecessary and immaterial. The thirteenth and fourteenth\* involved matters depending upon his personal opinion, which could not be taken as correct, or given effect, merely because he made it a ground of refusal to comply with the requirement. Moreover, his views could not affect the validity of the statute, nor entitle him to be excepted from its provisions. *Commonwealth* v. *Connelly*, 163 Mass. 539. *Commonwealth* v. *Has*, 122 Mass. 40. *Reynolds* v. *United States*, 98 U. S. 145. *Regina* v. *Downes*, 13 Cox C. C. 111. The other eleven propositions all relate to alleged injurious or dangerous effects of vaccination. The defendant " offered to prove and show by competent evidence," these so called facts. Each of them, in its nature, is such that it cannot be stated as a truth, otherwise than as a matter of opinion. The only " competent evidence " that could be presented to the court to prove these propositions, was the testimony of experts, giving their opinions. It would not have been competent to introduce the medical his-

---

\* The thirteenth and fourteenth offers of proof in the Jacobson case, referred to above, were as follows : " 13. That this defendant refused to submit to vaccination for the reason that he had, when a child, been caused great and extreme suffering, for a long period, by a disease produced by his vaccination at that time. 14. That he had witnessed a similar result of vaccination in the case of his own son, and had personally known a great number of other instances of the same kind, and that his said refusal was prompted by his knowledge of the danger and his dread of the terrible consequences of vaccination." ·

tory of individual cases.   Assuming that medical experts could have been found who would have testified in support of these propositions, and that it had become the duty of the judge, in accordance with the law as stated in *Commonwealth* v. *Anthes,* 5 Gray, 185, to instruct the jury as to whether or not the statute is constitutional, he would have been obliged to consider the evidence in connection with facts of common knowledge, which the court will always regard in passing upon the constitutionality of a statute.   He would have considered this testimony of experts in connection with the facts that for nearly a century most of the members of the medical profession have regarded vaccination, repeated after intervals, as a preventive of smallpox; that while they have recognized the possibility of injury to an individual from carelessness in the performance of it, or even in a conceivable case without carelessness, they generally have considered the risk of such an injury too small to be seriously weighed as against the benefits coming from the discreet and proper use of the preventive; and that not only the medical profession and the people generally have for a long time entertained these opinions, but legislatures and courts have acted upon them with general unanimity.   If the defendant had been permitted to introduce such expert testimony as he had in support of these several propositions, it could not have changed the result.   It would not have justified the court in holding that the Legislature had transcended its power in enacting this statute on their judgment of what the welfare of the people demands.

An elaborate argument has been addressed to us upon the effect of the quoted words, " wholesome and reasonable" in our Constitution.   It is at least doubtful whether these words, considered in connection with accompanying provisions, restrict our General Court in the exercise of the police power, otherwise than by the constitutional limitations upon this power which exist under the constitutions of most of the other States of this country.   It is generally held that if a statute purports to be enacted to promote the general welfare of the people, and is not at variance with any provision of the Constitution, the question whether it will be for the good of the community is a legislative, and not a judicial question.   *Powell* v. *Pennsylvania,* 127 U. S. 678, 684, 686.   *Yick Wo* v. *Hopkins,* 118 U. S. 356, 370, 371.   *Mugler* v.

*Kansas,* 123 U. S. 623, 662. *Bancroft* v. *Cambridge,* 126 Mass. 438, 441. *Commonwealth* v. *Blackington,* 24 Pick. 352, 357. *Commonwealth* v. *Alger,* 7 Cush. 53, 96, 102. *Watertown* v. *Mayo,* 109 Mass. 315. *Opinion of the Justices,* 163 Mass. 589, 595. *In re Jacobs,* 98 N. Y. 98, 110. *People* v. *Gillson,* 109 N. Y. 389, 401. If a law relates to a subject in regard to which the General Court is authorized to legislate, this court is not justified in setting aside the statute as unreasonable and unconstitutional merely because the judges differ in opinion from the legislators on the question whether it will "be for the good and welfare of this commonwealth." But if a statute invades personal rights to liberty or property, and is not directed to the promotion of the general welfare, but is an evasion of the principles on which legislative action should be founded, and by which it should be regulated, and is thus an abuse of legislative power, it should be declared unconstitutional.

We see no reason for regarding the present statute as outside of legislative authority to enact it. Plainly it is wholesome and reasonable in the sense that it relates to a subject about which the Legislature may well concern itself. There is no reason for holding that the measures authorized by it do not relate directly to the promotion of the intended object. The theoretical possibility of an injury in an individual case as a result of its enforcement does not show that as a whole it is unreasonable. The application of a good law to an exceptional case may work hardship. There is no reason to suppose that the enforcement of the requirement, in the present case, was conducted harshly. Naturally there would be regard to temporary conditions, if they became important, as to the time and manner of its enforcement. If a person should deem it important that vaccination should not be performed in his case, and the authorities should think otherwise, it is not in their power to vaccinate him by force, and the worst that could happen to him under the statute would be the payment of the penalty of $5.

The defendants' contention that the statute works unequally, in making an exception of minors and persons under guardianship, is not well founded. It only limits the liability to a penalty for neglect of the requirement to persons who have a right to control their own conduct.

We are of opinion that the statute is constitutional and that there was no error at the trial.    In each case the entry must be

*Exceptions overruled.*

NOTE.    A similar decision was made on the same day in the cases of

COMMONWEALTH *vs.* JOHN H. MUGFORD.

SAME *vs.* SAME.

TWO COMPLAINTS, received and sworn to on January 26, 1902, in the East Boston District Court, both against the same defendant, under R. L. c. 75, § 137, for refusing to comply with an order of the board of health of the city of Boston, requiring the vaccination and revaccination of all the inhabitants of that city, in the first case as to the defendant himself, and in the second case as to Eva·Mugford, a child of the defendant over two years of age.

On appeal to the Superior Court the cases were tried before *Sheldon,* J., who refused to make the rulings requested by the defendant, and excluded evidence offered by him of the same character as that offered by the defendant in *Commonwealth* v. *Jacobson,* above.    In each case the jury returned a verdict of guilty; and the defendant alleged exceptions.

*F. M. Davis,* for the defendant.

*M. J. Sughrue,* First Assistant District Attorney, for the Commonwealth.

BY THE COURT.    These cases are governed by *Commonwealth* v. *Jacobson.*