LEE v. STATE.

PALMER v. STATE.

Opinion delivered January 12, 1920.

1. ANIMALS—FAILURE TO DIP CATTLE—INDICTMENT.—An indictment alleging that defendant "unlawfully failed to dip his cattle" *held* sufficient.

2. ANIMALS—FAILURE TO DIP CATTLE—VARIANCE AS TO OWNERSHIP.—In a prosecution for failure to dip cattle, proof that the cattle did not belong to defendant, but to his wife, was immaterial where he assessed and paid taxes on the cattle in his own name and otherwise ·controlled them and his duty to dip was that of an owner.

3. ANIMALS—FAILURE TO DIP—DEFENSE.—One ordered to dip his cattle on certain days is criminally liable for failure to do so unless it was impossible to comply, and it was not error to refuse to instruct the jury to acquit if reasonable effort had been made to dip them.

4. ANIMALS—FAILURE TO DIP—DEFENSE.—It is no excuse for failure to dip cattle that some of the cattle dipped were scalded and otherwise injured, provided the mixture conformed to the formula prescribed by the State Board of Control.

5. ANIMALS—DUTY TO DIP CATTLE.—Placing a particular county or portion thereof in free area does not mean that dipping may not thereafter be required in such area.

6. CRIMINAL LAW—JUDICIAL NOTICE.—Although the courts will take judicial notice of general rules for the conduct of business which have been duly made and published by the Board of Control in tick eradication work, it can not take judicial notice of all actions taken by the board in the execution of such rules.

7. ANIMALS—TICK ERADICATION—RULES OF BOARD.—When the Board of Control adopted a rule that where systematic tick eradication is to be conducted in any county due notice of same will appear in one or more newspapers published in such county, the regulation makes notice a condition precedent to its enforcement, and it was error to exclude testimony to the effect that no such publication had been made.

Appeal from Union Circuit Court; *Chas. W. Smith,* Judge; reversed.

*Powell & Smead,* for appellant.

1. The demurrer should have been sustained to the indictment. It charges no offense. The rules and regulations promulgated by the Board of Control were not disobeyed. The county was in the free area, and it was no violation of law to fail to dip cattle in Union County after March 1, 1919. 208 S. W. 436 has not been overlooked, but is should be overruled. No rule requiring the dipping appears in the rules of the Board of Control, nor was any notice given or published. *Ashcraft* v. *State,* 140 Ark. 505.

2. It was error to exclude evidence of damage to cattle by the formula. *Boyer* v. *State, ante,* p. 84.

3. The court erred in refusing defendant's instructions 3 and 7 and in giving No. 1 for the State, also in refusing 5 and 6.

4. There was error in permitting the evidence as to facts occurring after the indictment.

*John D. Arbuckle,* Attorney General, and *Robert C. Knox,* Assistant, for appellee.

1. The indictment is sufficient. 126 Ark. 561; 208 S. W. 436; Kirby's Digest, § 2229.

2. Notice was given. Courts take judicial notice of the rules of the Board of Control. 130 Ark. 453-6.

3. No defense that Union County is in the free area. Act 86, Acts 1915.

4. No error in excluding evidence of damage to cattle or refusing the instruction thereon. The mixture as testified to conforms to the formula prescribed by the board. 114 Ark. 398.

5. No error in giving No. 1 for the State or refusing Nos. 5 and 6 for defendant. *Ashcraft* v. *State,* 140 Ark. 505.

6. Evidence that appellant had not dipped cattle since the indictment was admissible. It was competent to impeach his statement as to his failure to dip at all.

SMITH, J. There is no connection between the two appeals disposed of in this opinion except that it has been found that both appeals can be disposed of in a single opinion, as substantially the same questions are raised in each case.

The indictment in each case alleged that appellant had "unlawfully failed to dip his cattle," and the sufficiency of this allegation is raised by demurrer. We have heretofore held against appellants' contention in this respect in the cases of *Palmer* v. *State,* 137 Ark. 160, and *Rider* v. *State,* 126 Ark. 501.

In the instant case of L. Palmer, it is insisted that, even though the indictment is held sufficient, there is a variance between it and the proof, in that it is shown that the cattle which he failed to dip belonged to his wife. That fact is immaterial, however, under the testimony in this case, as it is shown that appellant Palmer assessed and paid the taxes on the cattle in his own name and otherwise controlled them; and his duty to dip was that of an owner. The case is analogous to that of an indictment for larceny where proof of special ownership is held sufficient to sustain a conviction under a general allegation of ownership.

Various excuses were offered by each of the appellants to justify their failure to dip, as, for instance, on one occasion one of the appellants had lost a valuable young mule the day before the dipping was to be done.

Other excuses were that the cattle had strayed from their customary range and that it had been impossible to herd them in time for the dipping; and instructions were asked which in effect told the jury to acquit if a reasonable effort had been made to dip on the regular dipping days. These instructions were properly refused, as the testimony did not show an impossibility to comply with the regulations. *Ashcraft* v. *State,* 140 Ark. 505.

There was testimony that when the dipping vats were properly prepared the chemical preparation did not injure the cattle, and an offer was made to show that cattle were scalded and otherwise injured, and upon this testimony instructions were asked to the effect that if cattle were injured as a result of being dipped failure to dip would not be unlawful. These instructions were properly refused. The dipping would be required, even though some cattle were injured, if the mixture conformed to the formula prescribed by the State Board of Control. *Boyer* v. *State, ante,* p. 84.

It is argued that the testimony shows that the formula prescribed by the Board of Control was not used. The record does have the inspector say that in charging his vat he used 24 barrels of sal soda, but it is apparent that the statement should have read 24 pounds, as in answer to the question, "How did you prepare the sal soda for the vat?" the inspector answered, "Mixed it in a can."

Other assignments of error are discussed in the brief, but without setting them out we think it suffices to say that in other cases involving the enforcement of the rules and regulations of the Board of Control in tick eradication work we have held adversely to appellants' contentions.

It does appear, however, that both cases under consideration originated in Union County, and that the failure to dip was committed subsequently to March 1, 1919, that being the day when Union County was placed in what is known as free area, that is, territory in which tick eradication work was supposed to be complete, where

cattle from such territory may lawfully be shipped to uninfected territory without complying with certain rules and regulations applying in shipments from infected territory to uninfected territory.

Placing a particular county or a portion thereof in free area does not mean, however, that dipping may not thereafter be required in such county or community. The rules of the Board of Control provide that it may be done. Systematic dipping may be required. Regulation No. 5 on the subject of "Systematic Work" is as follows: "When systematic tick eradication work is to be conducted in any county of this district, due notice of same will appear in one or more newspapers of general circulation published in said county. In counties or portions of counties where systematic tick eradication work is being conducted under the regulations of this board, it shall be the duty of all persons owning or having charge of any cattle to dip all their cattle every fourteen days under the supervision of a duly authorized inspector of this board unless they receive written notice that they are not required to dip their cattle."

An offer was made to show that the notice here provided for was not given; but this testimony was excluded, and that action of the court is defended in the brief on behalf of the State in the following argument there found: "Appellant complains of the action of the court in excluding testimony offered which would have shown that the Board of Control had passed no resolution requiring the dipping of cattle in Union County. We think we have covered this matter in our brief in the Lee case. That was a matter of which the trial court and this court on appeal take judicial notice. It is not a matter of proof and cannot be offered by the State or by the defendant in evidence. The court judicially knows whether this resolution was passed or this order promulgated or not. Proof that it was or that it was not is not only unnecessary but incompetent. The question cannot be submitted to the jury, but was wholly a question for the court to determine, and the court should determine it, not from the

evidence offered, but from the facts which come to the judicial knowledge of the court." We do not agree with this argument. It is true we have several times held, and in this opinion have reaffirmed the holding, that, we take judicial knowledge of the rules and regulations promulgated by the State Board of Control, and that it is unnecessary, therefore, to set out these rules in an indictment charging their violation. Our more recent cases to that effect are bottomed upon the case of *K. C. So. Ry. Co.* v. *State,* 90 Ark. 343, where it was said: " 'When a statute authorizes executive officers to make general rules for the conduct of public business, and such rules are duly made and published, the courts will take judicial notice of them.' 7 Enc. of Evidence, 990; 16 Cyc. 903; *Caha* v. *United States,* 152 U. S. 211."

But it would be a very great extension of the doctrine of that case to hold that we not only take judicial notice of general rules for the conduct of public business which have been duly made and published by the Board of Control, but that we also take judicial notice of all actions taken by the board in the execution of these rules. The board, as well as the public, is bound by its own rules, and the public has a right to expect compliance therewith on the part of the board. The regulation set out above provides that where systematic tick eradication work is to be conducted in any county, due notice of same will appear in one or more newspapers of general circulation published in said county. The regulation itself makes this notice a condition precedent to the enforcement of regulations requiring dipping to be done, and the court should not, therefore, have excluded the testimony upon this subject, and for that error the judgment will be reversed, and the causes remanded for a new trial.